OPINION
{¶ 1} Plaintiff-appellant, Continental Real Estate Companies, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Cott Systems, Inc. For the following reasons, we reverse and remand.
 {¶ 2} In September 1998, plaintiff and defendant entered into an "Exclusive Sales Listing Agreement" ("listing agreement"), which provided that defendant would pay plaintiff a sales commission if certain conditions were met relating to the sale of "[a]ll or part of land and buildings at 1508, 1515-1509 Hess Street and 921, 935, 939-945 King Avenue," Columbus, Ohio. The "Term" of the listing agreement began on September 10, 1998, and ended March 31, 1999. The listing agreement had a "tail" provision, which provided, in pertinent part, as follows:
Owner further agrees that Owner shall pay Broker a commission * * * if, within one hundred twenty (120) calendar days after the expiration or termination of the Term, the Property is sold to, or Owner enters into a contract of sale of the Property with, or negotiations continue, resume or commence and thereafter continue leading to a sale of the Property to any person or entity * * * with whom Broker has negotiated * * * or to whom the Property has been submitted prior to the expiration or termination of the Term. Broker is authorized to continue negotiations with such persons or entities. Broker agrees to submit a list of such persons or entities to Owner no later than fifteen (15) calendar days following the expiration or termination of the Term, provided, however, that if a written offer has been submitted then it shall not be necessary to include the offeror's name on the list.
 {¶ 3} In October 1999, and after extensive negotiations, defendant and Certified Oil Company ("Certified") entered into a purchase agreement, which included the sale of property located at "935 King Avenue, 939-945 King Avenue, 1509 Hess Street, 1515 Hess Street," Columbus, Ohio ("the subject property"). The October 1999 agreement was contingent on the approval of Certified's board of directors. Certified's board of directors did not approve the transaction. In early November 1999, plaintiff, defendant, and Certified executed a "Mutual Release Form" ("the release"). In March 2000, Certified purchased the subject property from defendant.
 {¶ 4} On March 16, 2004, plaintiff filed a complaint in the Franklin County Court of Common Pleas against defendant, alleging that it was entitled to a commission on the sale of real estate, pursuant to the listing agreement. On July 9, 2004, defendant filed a motion for summary judgment. On August 24, 2004, plaintiff filed a memorandum contra defendant's motion for summary judgment. On August 31, 2004, defendant filed a reply memorandum in support of its motion for summary judgment. On November 23, 2004, plaintiff filed a motion for summary judgment, and on November 29, 2004, defendant filed a memorandum contra plaintiff's motion.
 {¶ 5} On December 3, 2004, the trial court filed a decision and entry, wherein it granted defendant's motion for summary judgment and denied plaintiff's motion for summary judgment as moot. The trial court found the following sentence in the mutual release as dispositive of the issue before it: "No party to this Mutual Release shall have further obligation to any other party with respect to the Contract or the property designated in the Contract." The trial court interpreted the release "to mean that after November 2, 2000 [sic], no party to the Release has any obligation to any other party to the Release regarding the property in the Release or the Contract." (Dec. 3, 2004 Decision and Entry, at 7.)
 {¶ 6} Plaintiff appeals and has set forth the following assignment of error for our consideration:
The Common Pleas Court erred to the prejudice of Plaintiffs-Appellants in granting summary judgment in favor of Defendant-Appellee.
 {¶ 7} By its assignment of error, plaintiff asserts that the trial court erred in granting summary judgment in favor of defendant. Plaintiff essentially argues that ambiguity in the release creates a question of fact. Defendant argues that the release is not ambiguous, and therefore the trial court did not err in granting summary judgment.
 {¶ 8} Appellate review of a lower court's granting of summary judgment is de novo. Mitnaul v. Fairmount Presbyterian Church,149 Ohio App.3d 769, 2002-Ohio-5833, at ¶ 27. Summary judgment is proper when a movant for summary judgment demonstrates: (1) no genuine issue of material fact exists; (2) the movant is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Grady v. State Emp.Relations Bd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 9} Under Civ.R. 56(C), a movant bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. Dresher v. Burt (1996),75 Ohio St.3d 280, 293. Once a movant discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial.Dresher, at 293; Vahila v. Hall (1997), 77 Ohio St.3d 421; Civ.R. 56(E).
 {¶ 10} The construction of written contracts is a matter of law. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph one of the syllabus. "Unlike determinations of fact which are given great deference, questions of law are reviewed by a court de novo." Nationwide Mut. Fire Ins. Co. v.Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108. "The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties." FosterWheeler Enviresponse, Inc. v. Franklin Cty. Convention FacilitiesAuth. (1997), 78 Ohio St.3d 353, 361, citing Aultman Hosp.Assn. v. Community Mut. Ins. Co. (1989), 46 Ohio St.3d 51, 53. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Kelly v.Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus.
 {¶ 11} The construction and interpretation of a written contract to determine whether the terms are ambiguous and, thus, require extrinsic evidence to ascertain its meaning is a question of law. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241. "A contract or its terms will be viewed as ambiguous only in the event that the rights and duties imposed upon the parties thereto are reasonably subject to conflicting interpretations." Kern v. Clear Creek Oil Co., Ashland App. No. 02 COA 013, 2002-Ohio-5438, at ¶ 20, citing Santana v. AutoOwners Ins. Co. (1993), 91 Ohio App.3d 490, 494, citingHartford Ins. Co. of Southeast v. Occidental Fire Cas. Co. ofN. Carolina (C.A.7, 1990), 908 F.2d 235. Moreover, "`the fact that the parties adopt conflicting interpretations of the contract in the throes of litigation does not create ambiguity where none exists.'" Carnahan v. SCI Ohio Funeral Services,Inc. (Mar. 13, 2001), Franklin App. No. 00AP-490, quotingSteward v. Champion Intern. Corp. (C.A.11, 1993), 987 F.2d 732,734.
 {¶ 12} In this case, the terms of the release are unclear, as they relate to the listing agreement. The sentence in the release, which was cited by the trial court as being dispositive, indicates that no party to the release has any obligation to any other party to the release regarding the property in the October 1999 purchase agreement. However, the release also states the following:
* * * This Mutual Release is specific to the property as described in the Contract and has no relation to other property, contract or agreement to which the Buyer(s), Seller(s) and Broker(s) may be parties.
The Broker(s) further specifically releases the Seller(s) and Buyer(s) from any obligations for a commission or other payments in connection with the above described Contract.
 {¶ 13} Defendant argues that "[n]ot only are the parties no longer obligated to one another in terms of the October 15, 1999 Contract, but no further obligation shall exist, one to another, regarding the property referred to in that Contract." (Defendant's brief, at 5.) Although the release states that no party to the release shall have further obligation to any other party "with respect to the * * * property designated in the Contract," it also states that the release "has no relation to other property, contract or agreement to which the Buyer(s), Seller(s) and Brokers(s) may be parties." The listing agreement related to the property referred to in the release, and the release states that no party shall have further obligation to any other party regarding that property. However, the release also indicates that it has no relation to any other agreement involving the parties, other than the October 1999 contract. An "other agreement" would include the listing agreement.
 {¶ 14} Considered in its entirety, the release is unclear as to whether the parties intended to discharge any and all rights or duties under the listing agreement. This uncertainty as to the parties' intent on this issue requires an evidentiary hearing, wherein extrinsic evidence is considered, in order to ascertain the parties' intent. The extrinsic evidence may include: (1) the circumstances surrounding the parties at the time the contract was made; (2) the objectives the parties intended to accomplish by entering into the contract; and (3) any acts by the parties that demonstrate the construction they gave to their agreement.Blosser v. Carter (1990), 67 Ohio App.3d 215, 219.
 {¶ 15} In addition to its argument relating to the affect of the release on the listing agreement, defendant argues that plaintiff is not entitled to a commission under the terms of the listing agreement. Defendant specifically contends that plaintiff is not entitled to a commission because "the final negotiations between Certified and Cott, which began and was completed on either the last Friday of February, 2000 or the first Monday of March, 2000, (James Goodenow depo., at 25) did not `continue, resume or commence' within the 120 days after the term of the Listing expired on March 31, 1999." (Defendant's brief, at 7.) Defendant asserts that the "deal" which had continued, resumed or commenced within the 120-day period was "dead" upon Certified's board of directors' rejection of the transaction. (See defendant's brief, at 7, citing depositions of David J. Hogan, James Goodenow, and Carl Rechner.)
 {¶ 16} For purposes of determining whether summary judgment was appropriate, we find defendant's second argument to be unpersuasive. As a result of extensive negotiations, which began before the expiration of the "tail" period, defendant and Certified's representative entered the October 1999 purchase agreement. However, the transaction did not proceed under that agreement, as Certified's board of directors rejected the terms of the agreement. The parties thereupon entered the release in early November 1999, specifying that the contract entered in October 1999 was null and void. The release does not state that any negotiations relating to the sale of the property had been terminated. In an affidavit, which the trial court considered in the summary judgment proceedings, Tom Sugar, a real estate agent for plaintiff, stated the following: "Although the contract was rejected by Certified, I continued to negotiate on behalf of Cott, with Certified Oil, regarding a potential purchase of the subject property. I also showed the subject property to Certified after October 1999, with the approval and knowledge of Cott." (Sept. 10, 2004 affidavit of Tom Sugar, at paragraph 14.) Defendant ultimately sold the subject property to Certified in March 2000.
 {¶ 17} Construing the evidence in favor of the nonmoving party, it reasonably could be inferred that the negotiations between defendant and Certified in February and March 2000, were a continuation of the negotiations that occurred within the 120-day tail period specified in the listing agreement. As such, defendant's argument in this appeal, as to this issue, is unpersuasive.
 {¶ 18} Based on the foregoing, we sustain plaintiff's single assignment of error. Accordingly, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment reversed and cause remanded.
Sadler and Deshler, JJ., concur.
Deshler, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.